**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: ) | |
| ) | |
| JENNIFER ANN VINGER, ) | Case No. 15-12069-SBB |
| ) | Chapter 13 |
| Debtor. ) | |
| ) | |

**ORDER DENYING CONFIRMATION OF CHAPTER 13 PLAN**

THIS MATTER is before the Court on confirmation of the Debtor's Chapter 13 Plan (Docket No. 12) and the Objection thereto (Docket No. 18) filed by the Standing Chapter 13 Trustee, Douglas Kiel ("the Trustee"). The Court, having heard the arguments of counsel at the hearing on May 13, 2015; and reviewed the Debtor's Brief in Support of Plan Confirmation (Docket No. 27) and the Trustee's Brief in Support of Objection to Confirmation of Chapter 13 Plan (Docket No. 26); is now ready to rule.

**I.     BACKGROUND AND FACTS**

Jennifer Ann Vinger (the "Debtor") filed her voluntary Chapter 13 petition on March 5, 2015 (Docket No. 1). The Debtor is married with one dependent child, and she is a single filer. Her husband (the "non-filing spouse") previously filed a Chapter 13 bankruptcy in this Court.[1] She and her non-filing spouse are both employed, and the Debtor's Form 22C indicates that they earn a total of $9,097.05 each month. Although their unadjusted monthly income is above median income for a household of three in Colorado, the Debtor has taken a marital adjustment of $3,784.58 on Line 13 of Form 22C, which renders her below median income. As a result, she has proposed a 36-month Chapter 13 plan (the "Plan").

The Trustee has objected to confirmation of the Plan. Specifically, the Trustee opposes the Debtor's application of the marital adjustment to one-half of the Debtor's monthly rent

---

[1] *In re Christopher M. Vinger,* Case No. 13-18899-SBB.

1

payment, or $797.50.[2] The Trustee argues that the Debtor is actually above median income; therefore, the applicable commitment period of her Plan must be 60 months.[3]

The parties have stipulated that the Debtor and her non-filing spouse are jointly and severally liable on a lease agreement for their residence in the amount of $1,595.00 per month. The parties have also stipulated that the Debtor and her non-filing spouse each deposit their pay checks into a joint checking account and file joint tax returns.

For the reasons set forth herein, the Court denies confirmation of the Debtor's Plan.

II.     ANALYSIS

    A.     *Chapter 13 and the Applicable Commitment Period*

Chapter 13 of the Bankruptcy Code allows a debtor to obtain a discharge of her debts if she pays her creditors a portion of her monthly income in accordance with a court-approved plan.[4] The duration of a Chapter 13 plan – known as the "applicable commitment period" –is determined by 11 U.S.C. § 1325(b)(4).[5]

For purposes of applicable commitment period, Chapter 13 debtors are placed in one of two categories – above median income or below median income for household size in their particular state.[6] If a debtor is *above* median income, then the applicable commitment period is 60 months. However, if a debtor is *below* median income, then the applicable commitment period is reduced to 36 months.

Practically speaking, a debtor determines the length of her applicable commitment period by filling out Form 22C-1. Part 1 of the form calculates total average monthly income for a debtor and his or her spouse, regardless of whether the spouse has also filed bankruptcy. Part 2 takes the total average monthly income from Part 1 and allows the debtor to take certain deductions on Line 13 if the spouse is not a co-debtor in the bankruptcy case. These potential

---

[2] For purposes of this Motion, the Trustee has not disputed any of the other line items taken as part of the Line 13 marital adjustment. Arguably, other marital adjustments on Line 13 of Form 22C could be challenged and they would be subject to similar treatment as the monthly rent payment.

[3] The Trustee also notes that if this Court finds that the applicable commitment period is 60 months, then the Debtor is subject to the "means test" under 11 U.S.C. § 707(b) and must fill out the remainder of Form 22C to determine her disposable income.

[4] *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 64 (2011) (citing 11 U.S.C. § 1301, *et seq.*).

[5] Unless otherwise noted, all statutory references shall be to Title 11 of the United States Code.

[6] As defined by Internal Revenue Service guidelines.

2

deductions are known as the "marital adjustment." [7] The adjusted total is considered the debtor's "current monthly income."

Section 1325(b)(4) of the Bankruptcy Code provides that if "the current monthly income of the debtor and the debtor's spouse combined" exceeds the median income for a household of three for the state of Colorado, then the Debtor is considered above median.[8] All other income levels are below median. "Current monthly income" is defined by § 101(10A) of the Bankruptcy Code, and the "marital adjustment" is the primary way that a debtor with a non-filing spouse adjusts her gross income to meet that definition. Therefore, the Court's determination here turns on its interpretation of the phrase "current monthly income of the debtor and the debtor's spouse combined."

At the outset, the Court notes that the determination of "above" or "below" median income occurs twice during the Chapter 13 plan process – first, to determine applicable commitment period under § 1325(b)(4), and second, to determine the analysis for calculating disposable income under § 1325(b)(2). The language in the Bankruptcy Code describing what income is to be included is not the same: § 1325(b)(4) refers to the "current monthly income of the debtor and the debtor's spouse combined"; § 1325(b)(2) refers to the "current monthly income received by the debtor."[9] The incongruity in language leaves some question as to whether the marital adjustment for purposes of calculating commitment period differs from the marital adjustment to be taken for purposes of calculating disposable income.

This is an issue of first impression for this Court; however, the overwhelming majority of courts that have taken up the issue have found that the marital adjustment to be utilized for both analyses is identical.[10]

"Current monthly income" is defined by § 101(10A) of the Bankruptcy Code:

---

[7] Form 22C "first call[s] for a separate statement of the 'current monthly income' of the non-filing spouse as if a separate bankruptcy had been filed and then providing for a subtraction to the debtor for the amount of income not regularly paid for the household expenses of the debtor and the debtor's dependents." *In re Clemons,* 2009 WL 1733867, at *2 (Bankr. C.D. Ill. June 16, 2009).

[8] 11 U.S.C. § 1325(b)(4).

[9] The determination of "above" or "below" median income for purposes of calculating disposable income is critical. Under § 1325(b)(3), if a debtor is above median income, then her disposable income (i.e. payments to creditors under his plan) is determined by the more exacting standard of § 707(b)(2), also known as the "means test." If a debtor is below median income, then disposable income is determined by subtracting a debtor's current monthly income from her "reasonably necessary" monthly expenses for herself or her dependent(s), as set forth in § 1325(b)(2).

[10] *See, e.g., In re Mack*, No. 12-10594, 2012 WL 6790194 (Bankr. N.D. Ga. Sept. 11, 2012); *In re Clemons,* 2009 WL 1733867, at *2 (Bankr. C.D. Ill. June 16, 2009) (aggregating cases and citing *In re Stansell,* 395 B.R. 457 (Bankr.D.Idaho 2008); *In re Borders,* No. 07–12450, 2008 WL 1925190 (Bankr.S.D.Ala. Apr. 30, 2008); *In re Dugan,* 2008 WL 3558217; *In re Grubbs,* 2007 WL 4418146; *In re Hall,* No. 06–71296, 2007 WL 445517 (Bankr.C.D.Ill. Feb. 12, 2007); *In re Quarterman,* 342 B.R. 647 (Bankr.M.D.Fla.2006)). *But see In re Ariyaserbsiri*, 2008 WL 5191200 (Bankr. E.D. Tex. Sept. 17, 2008).

> (A) [Current monthly income] means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income . . . and;
> **(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents** . . .[11]

By the Bankruptcy Code's own definition, "a debtor's spouse has no current monthly income except in a joint case."[12] Therefore, in a married debtor's individual case, current monthly income applies only to income received by the debtor.

This reading does not render the words "and the debtor's spouse combined" in § 1325(b)(4)(A)(ii) meaningless, "as the debtor's spouse will have currently monthly income in a joint case and, in such a case, directs the court to consider the spouse's current monthly income in determining the applicable commitment period."[13] Put another way, § 1325(b)(4)(A)(ii) instructs married debtors to add "$0" for their spouse's currently monthly income when they have filed alone.[14] This analysis squares with the language in § 1325(b)(2).

Judge Karlin, sitting in the U.S Bankruptcy Court for the District of Kansas, aptly summarized the reasons for harmonizing the two subsections:

> The Court can think of no reason why Congress would require the Court to treat a married debtor, who elects not to file jointly with his spouse, as if the case was filed jointly solely for the purpose of calculating the applicable commitment period, but provide different treatment for all other aspects of the means test. There is no readily apparent basis for requiring a debtor to account for all of his spouse's income when determining whether a Chapter 13 case must run for 36 or 60 months, but then allowing at least a portion of the spouse's income to be totally disregarded when deciding all other issues, such as what the debtor's projected disposable income will be . . . Instead, the Court finds the more reasonable interpretation of § 1325(b)(4) is that Congress inadvertently failed to include the qualifier that the spouse's current monthly income must only be "combined" with the filing debtor in a joint case by putting those words in parenthesis (or elsewhere), as it did in the definition of current monthly income. This interpretation of the statute brings the treatment of the spouse's income into

---

[11] 11 U.S.C. § 101(10A) (emphasis added).

[12] *In re Dugan*, No. 07-40899-13, 2008 WL 3558217, *2-3 (Bankr. D. Kan. Aug. 12, 2008). *See also In re Mack*, 2012 WL 6790194 at *2.

[13] *Dugan*, 2008 WL 3558217 at *2-3.

[14] *See id.*

4

conformity with how that income is treated elsewhere in the means test calculations and avoids an anomalous result.[15]

Judge Karlin further pointed out that a literal reading of § 1325(b)(4) would artificially inflate combined currently monthly income beyond the total number of dollars actually brought in by the household because a large portion of a debtor's "current monthly income" (as defined by § 101(10A)) already includes a portion of the non-filing spouse's income and vice versa.[16] By harmonizing § 1325(b)(4) with § 1325(b)(2), the Court avoids an absurd result.

### B. *The Debtor's Line 13 Marital Adjustment for One-Half the Rent Expense*

The burden of proof to obtain confirmation is on the proponent of the plan.[17] The burden of proof to demonstrate that a marital adjustment is appropriate is also on the plan proponent, here the Debtor.[18] Here, the sole issue in dispute is whether the Debtor may use the Form 22C, Line 13 marital adjustment to deduct half of her monthly rent obligation – $797.50 – which she attributes to her non-filing spouse. This determination has significant implications for the Debtor's bankruptcy case. If the Court allows the deduction, then the Debtor is considered "below median income" and will have a 36-month plan period. If the Court does not permit the deduction, then the Debtor will be "above median income" and subject to a 60-month plan.

Put another way, allowance of a marital adjustment is allowance of a deduction—or reduction—in the debtor's current monthly income, which, in turn, is a factor in relegating a debtor's applicable commitment period from 60 months to 36 months. Here, the Debtor's claimed marital adjustment for 50% of the monthly home rental expense—or reduction in her current monthly income in the amount of her spouse's payment on the rental obligation—relegates the Debtor to a reduced 36-month commitment period rather than the more burdensome and costly 60-month plan.

The Court's analysis turns on its interpretation of § 101(10A)(B) – whether one-half of the Debtor's monthly rent obligation is "a household expense of the debtor or the debtor's dependents." In this district, Judge Romero recently discussed the marital adjustment in *In re Toxvard*, 485 B.R. 423 (Bankr. D. Colo. 2013):

---

[15] *Id.*

[16] *Id.* (citing Judge Lundin's analysis in his well-known Chapter 13 treatise, Keith M. Lundin, CHAPTER 13 BANKRUPTCY, 3D ED. (2007)). Consider this purely hypothetical example: If a debtor earns $2,000 per month, plus her non-filing spouse contributes $1,000 per month to household expenses, her current monthly income is $3,000. If her non-filing spouse also earns $2,000 per month, and the debtor also contributes $1,000 to household expenses, then his current monthly income is also $3,000. Thus, the current monthly income of the debtor and the debtor's spouse "combined" – as set forth by § 1325(b)(4)(A)(ii) is $6,000 – which is $2,000 *more* than they actually bring in. This contrasts with a joint case where, per § 101(10A), current monthly income would be determined in a single calculation for both debtors. § 101(10A) ("The term 'current monthly income' . . . means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive").

[17] *In re Toxvard*, 485 B.R. 423, 432 (Bankr. D. Colo. 2013).

[18] *In re Montalto*¸ 2015 WL 5474295, *1 (Bankr. E.D. N.Y. 2015).

Our interpretation of the Bankruptcy Code starts where all such inquiries must begin: with the language of the statute itself. [W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms. When a word is not defined, the Court should apply its ordinary meaning. The term household expenses is not defined by the Bankruptcy Code. However, a household is ordinarily defined as [a] family living together.... A group of people who dwell under the same roof. An expense is defined as "[a]n expenditure of money."[19]

This Court agrees with Judge Romero's definition of household expense. There is no question that the Debtor's rent is a household expense. The Debtor, her husband, and the Debtor's child live together as a family in the leased property.

Thus, the next – and trickier – issue is whether rent is a household expense "of the debtor and the debtor's dependent." The Court's "determination of the amount paid by a non-filing spouse on a regular basis for household expenses of the debtor is necessarily fact-specific and subject to interpretation."[20]

The Debtor urges the Court to apply Judge Romero's decision regarding certain personal property and expenses in *Toxvard* to this case.[21] There, the court split in half a number of joint household expenses, including utilities and a car payment, and permitted the Debtor to deduct the non-filing spouse's portion as a marital adjustment. Essentially, the Debtor asks the Court find that joint household obligations with a non-filing spouse may be presumptively split 50/50 and excluded from the Debtor's income for purposes of calculating the applicable commitment period.[22]

The Court does not interpret the holding in *Toxvard* as creating such a broad rule, and the Court is unwilling to do so here. The debtor's circumstances in *Toxvard* were fundamentally different than this case. There, the debtor and her non-filing spouse kept their income and expenses wholly separate. They had separate bank accounts; maintained pre-marriage assets and liabilities individually; and filed separate tax returns. Their housing expense was a mortgage on a property owned solely by the non-filing spouse and paid for solely by the non-filing spouse from his individual bank account.

Here, every aspect of the Debtor's and her husband's financial lives are intertwined – they have the same bank account from which they pay their bills; they file joint tax returns; and they are jointly and severally liable on their leased home. Importantly, the entire interest in the

---

[19] *Id.* at 435 (internal citations omitted).

[20] *Id.* at 435-436.

[21] The primary holding in *Toxvard* dealt with whether the Debtor could deduct the entire mortgage expense paid by her non-filing spouse from her income for purposes of taking a marital adjustment on the disposable income calculation. The Debtor concedes that the facts relating to the mortgage in *Toxvard* are not applicable to this case.

[22] The Court notes that the parties did not cite any cases which analyzed taking a marital adjustment for a household's rent expense, and the Court is not aware that any such opinions exist.

leased property is property of the Debtor's estate under § 541(a)(2) and subject to the automatic stay.[23]

Notwithstanding their financial arrangements and the Debtor's full liability under the lease, she still asks the Court to make an arbitrary division of the rent expense – 50/50 – without any basis for showing that fifty percent of the rent can be attributed to her spouse's income. This Court finds that a 50/50 division of the rent expense flies in the face of the definition of "household expense." The Debtor's rent payment is an expenditure of money for a group of people living under one roof, and it is an expense for which the Debtor is 100 percent liable for the full payment, regardless of whether her husband pays $1 or $1500 in any given month. To attribute a portion of the rent as being "his" and "hers" ignores the legal realities of her lease obligation and makes no practical sense. The Debtor cannot divide usage of their residence or draw an imaginary line dividing the property. The entire rent obligation is a household expense belonging to her, regardless of how the Court approaches the issue.[24]

Furthermore, even if this Court were inclined to divide the rent expense, there is simply no objective basis for doing so since the Debtor and her husband have chosen to pool their resources.[25] Given the facts of this particular case, allowing an arbitrary 50/50 split would require this Court to create judicial fiction, and it is unwilling to do so.

Importantly, disallowing this portion of the marital adjustment does not put the Debtor or her spouse in a worse position than if they had jointly filed. The Debtor claims that by not allowing her to deduct one-half of the rent as a marital adjustment, she will have a higher plan payment because the disposable income calculation will not take into account that her higher income is merely a function of the rent obligation paid by her husband. This is simply incorrect.[26]

---

[23] Section 541(a)(2)(B) of the Bankruptcy Code provides that all interests of the debtor and the debtor's spouse in community property as of commencement of the case is considered property of the debtor's estate if the interest in property creates liability for an allowable claim against the debtor. Here, the rental lease is a marital debt under Colorado law because it was acquired during the Debtor and her non-filing spouse's marriage. *See In re Marriage of Jorgenson*, 143 P.3d 1169, 1171-72 (Colo. Ct. App. 2006). The Debtor has stipulated that she is jointly and severally liable under the lease, so the lease interest creates an allowable claim for 100% liability against her in her bankruptcy case.

[24] The Debtor also argues that by not permitting a division of the rent expense, this Court would eliminate the distinction between household expenses in single and joint cases. This Court's ruling does not announce a rule that all or a portion of household expenses may never be deducted on account of a non-filing spouse. Rather, this Court's ruling is consistent with the opinions of many other courts that such a determination is a fact-sensitive inquiry that involves an analysis of the nature of the legal obligation and whether payment can fairly be attributed solely to the non-filing spouse.

[25] *Accord In re Dugan*, 2008 WL 2558217 at *5 ("[T]he Court will not allow this Debtor, or any other debtor, to arbitrarily pick a number out of the air for a marital adjustment on Lines 13 and 19 without providing sufficient documentation … to show that the claimed amounts are properly deducted. In other words, Debtor must demonstrate that he really does not have access to the funds to help pay the expenses of the household.").

[26] The Debtor argues that she cannot take a deduction for her housing expense on Line 33 of Form 22C-2, which determines disposable income, because the rent is not a secured debt. That is correct. However, the Debtor is not

A review of the Debtor's husband's bankruptcy shows that he did not take a marital adjustment of one-half the rent obligation in his own Chapter 13 plan.[27] Rather, he took the IRS deduction for a housing expense, which he was entitled to as a result of his lease obligation. While the issue is not ripe, the Court sees no reason why the Debtor would not be entitled to the very same IRS deduction, as she is also jointly and severally liable for the entire rent obligation. Income constituting the entire rent expense is considered in her Chapter 13 plan; therefore, it follows that she should be permitted the standard IRS deduction that will back her whole rent expense out of her disposable income, thus ensuring that she is not effectively paying twice.[28]

### III. CONCLUSION

The focus of the post-BACPA Chapter 13 statutory scheme is to ensure that Debtors who *can* pay their creditors *do* pay their creditors.[29] Allowing a presumptive 50/50 split in this case would prejudice creditors from receiving a payout over five years and provide an unfair shortcut to the Debtor for obtaining her discharge – at her creditors' expense. It is the duty of this Court not just to ensure the Debtor's fresh start, but also to protect her creditors' rights.

For the reasons set forth herein, the Court concludes that the Debtor is not entitled to a marital adjustment for her husband's portion of the rent payment. It is therefore ORDERED that the confirmation of the Debtor's Chapter 13 Plan (Docket No. 12) is hereby **DENIED**, without prejudice. The Objection thereto filed by the Standing Chapter 13 Trustee (Docket No. 18) is **SUSTAINED**. The Court will establish deadlines for the filing of an Amended B22C and Chapter 13 Plan of Reorganization by separate order to be issued concurrently herewith.

Dated this 30th day of September, 2015.    BY THE COURT:

_Sid Brooks_
_____

Sidney B. Brooks,
United States Bankruptcy Judge

---

looking to the correct place on the form to deduct her housing expense. Line 9 of Form 22C-2 provides for deduction of her rent expense based on household size.

[27] Docket No. 32, Case No. 13-18899.

[28] This is another important distinction between this case and *Toxvard*. In *Toxvard*, the debtor had no legal liability on the mortgage, therefore she would not have been entitled to an IRS deduction for her housing expense. Absent permitting the marital adjustment for the mortgage expense, the debtor would have had an unfairly inflated disposable income. *See Toxvard,* 485 B.R. 423.

[29] *Ransom v. FIA Card Servs., N.A.,* 562 U.S. at 64-65.